NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
NATIONWIDE MUTUAL INSURANCE       :
COMPANY AS SUBROGEE OF            :
HALLMARK OF NEW JERSEY, INC.,     :
                                  :   Civil Action No. 07-0142 (JAG)
          Plaintiffs,             :
                                  :         OPINION
     v.                           :
                                  :
JAMES SCHALLER, LITITZ MUTUAL     :
INSURANCE COMPANY, JOHN J.        :
COYLE, et al.,                    :
                                  :
          Defendants.             :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion by defendant Lititz Mutual Insurance Company ("Defendant" or "Lititz") seeking the grant of summary judgment, pursuant to FED. R. CIV. P. 56(c), against plaintiff Nationwide Mutual Insurance Company ("Plaintiff" or "Nationwide"). For the reasons set forth below, this motion shall be granted.

**I. BACKGROUND**

Nationwide is located at 1001 Hector Street, Suite 300, Conshocken, Pennsylvania. (Complaint at 1.) Nationwide conducts business in Bergen County, New Jersey as subrogee[1] of Hallmark of New Jersey, Inc. ("Hallmark"). (Id.) Hallmark is a corporation doing business at 3000 Atrium Way Suite 217, Mount Laurel, New Jersey. (Id.) James Schaller is an individual

---

[1] A subrogee is one who succeeds to the legal rights of another. BLACKS LAW DICTIONARY 1427 (6th ed. 1990).

whose address is 4527 E. Stiles St., Philadelphia, Pennsylvania. (Id.) Lititz is a corporation doing business at 2 North Broad Street, Lititz, Pennsylvania. (Id.) John Coyle is an individual doing business at 1430 Donna Dr., South Hampton, Pennsylvania. (Id.)

Nationwide is in the business of providing insurance. (Id. at 2, ¶ 1.) Nationwide is the insurer for Hallmark under a Commercial General Liability Policy. (Id. at 2, ¶ 2.) At all times relevant to this action, Nationwide insured the work performed by Hallmark. (Id. at 2, ¶ 3.) Hallmark, the general contractor, contracted with John and Lollie Smith for home improvements at 1213 West State Street, Trenton, New Jersey ("Smith residence"). (Id. at 2, ¶¶ 4, 14.) Schaller was a subcontractor for Hallmark. (Id. at 2, ¶ 5.) Schaller was insured by Lititz. (Id. at 2, ¶ 6.) Schaller's insurance was provided by John Coyle as agent and/or broker of Lititz. (Id. at 2, ¶ 7.)

## II. FACTS

James Schaller met with John Coyle on January 9, 2004 in order to obtain a liability insurance policy. (Def. R. 56.1 Statement at ¶ 1.) John Coyle is a self-employed independent insurance agent with previous experience in claims and underwriting. (Id. at ¶ 2.)[2] Lititz is one of approximately 60 companies with which Coyle has a contractual relationship to provide insurance coverage. (Id. at ¶ 3.) Coyle has had a relationship with Lititz for more than 15 years and has placed approximately 500 policies with Lititz. (Id. at ¶ 4.) Coyle states that he asks dozens of questions to a prospective insured to determine the appropriate insurance policy because he knows different companies fit a particular customer's needs better. (Id. at ¶ 5.) When he sells a policy to a contractor, Coyle asks the individual what type of work he or she does and

---

[2] John Coyle was dismissed as a party to this action by consent in an Order (Docket Entry No. 16) dated January 28, 2008.

how long the individual has been in the business. (Id. at ¶ 6.) Coyle's practice is to ascertain the type of work the contractor performs generally. (Id.) He asks what the contractor does during the course of a year and what the contractor has done in the most recent two years. (Id.) Coyle asks if the prospective insured is an interior carpenter, or if the individual engages in framing, siding, works on windows, or does roofing work. (Id.) When Coyle has gathered all the information from the prospective insured, he completes the standard application that describes the person's work and spells out what type of coverage the prospective insured seeks to obtain. (Id. at ¶ 7.)

Coyle states that he informs contractors that Lititz does not insure roofing jobs and recommends other insurance companies for that purpose, such as Regis. (Id. at ¶ 8.) Coyle states that he is familiar with the carpentry business and understands that when the market is slow carpenters tend to accept whatever work they can find. (Id. at ¶ 9.) Coyle tells potential clients that Lititz does not cover roofing and explains that a contractor would need to complete a special form for roofing. (Id.) Coyle states that he asks contractors who are looking for a general liability policy if they do roofing. (Id. at ¶ 10.) Coyle says that since prospective clients often want to avoid paying the extra premium to obtain roofing coverage, it is his practice to remind prospective clients that roofing is not covered by a general liability policy. (Id.)

With respect to Schaller, Coyle asked him specifically what type of work he did. (Id. at ¶ 11.) Schaller told Coyle that he did carpentry, windows, and siding. (Id.) Coyle asked Schaller specifically if he did roofing work, and Schaller denied that he was a roofer. (Id.) The Accord and Application form that Schaller signed describes his work specifically as, "finish carpentry, closets, sheet rock, framing windows, hardwood flooring." (Id. at ¶ 12.) Coyle understood the

3

information contained on Schaller's Accord and Application form to be an exhaustive list of the kind of work that Schaller conducted in his business. (Id.) Coyle prepared a certificate of insurance form for Schaller, dated January 9, 2004, listing the certificate holder as Hallmark because Coyle thought Schaller said he needed proof of insurance for a job with Hallmark. (Id. at ¶ 13.) Coyle sent Hallmark the certificate of insurance. (Id.)

The work order, which is written on Schaller's letterhead, is for the roofing job at issue in this case. (Id. at ¶ 14.) The work order is for the Smith residence and is dated January 9, 2004. (Id.) The work order contains 13 points and is specifically and solely for a roofing job. (Id.) The relevant points of the work order list the work to be performed as "(1) Remove old shingles from porch roof, (2) Prep roof for rubber roof, (3) Lay 30 lb felt paper, (4) Install torch down rubber, (5) Install torch down rubber on 2 pent Roofs on side of house, (6) Install 25-year shingles over rubber on pent roofs. Shingles are to match color of top roof, and . . .(13) Remove all work related debris from job." (Id.)

Lititz' underwriting guidelines provide that Lititz does not insure roofers. (Id. at ¶ 15.) In the section entitled "Premises & Operations–Prohibited Classifications" under the headline: "Risks whose operations involve the following exposures are not to be written", roofers are specifically listed. (Id.) Lititz underwriters viewed Schaller's Accord and Application, signed by Schaller, and noted that Schaller did a "hodgepodge" of work. (Id. at ¶ 16.) Lititz wrote the policy for the broadest type of classification they could in order to include all types of minor work such as fixing fans or faucets. (Id.) The policy did not cover major work, but could include incidental patching of roofs. (Id.) Limitations on the type of work a handyman is allowed to perform under Lititz's policy are set forth in the ISO guidelines. (Id. at ¶ 16.) The guideline as

to a Handyperson provides, "This classification does not apply to risk that do roofing work, other than incidental patching performed while on the premises in connection with other non-roofing work being performed at the same premises." (Id. at ¶ 17.)

On Monday January 12, 2004, while using a torch to install a porch roof on the Smith residence, Schaller started a fire on the premises. (Id. at ¶ 18.) Upon learning of the fire and subsequent claim, Lititz conducted an investigation and determined the claim for coverage was denied and the policy was cancelled. (Id. at ¶ 19.) The basis for denial of coverage was that Schaller did not provide information that he would be doing roofing jobs, such as the one he undertook at the Smith residence, and his policy with Lititz did not provide coverage for roofing. (Id.) Lititz relied on the information that Schaller provided regarding the nature of his business. (Id.) By letter dated February 3, 2004, Lititz rescinded the policy to the date of inception for material misrepresentation in the application for insurance because Schaller represented that his business was to finish carpentry work, and he told the agent who sold him the policy that roofing was not a part of his business. (Id. at ¶ 20.)

Plaintiff filed the Complaint in the Superior Court of New Jersey, which was removed to this Court on diversity grounds. Plaintiff alleges that Defendant improperly refused to indemnify James Schaller, who is also a defendant in this case, for the damages he caused to the Smith residence and to an adjacent residence, while performing a roofing job. Plaintiff's insured (Hallmark) was joint and severally liable for the damages caused as a result of the fire. Plaintiff paid claims in the amount of $217,097.11 to settle claims by the Smith family and the owner of the adjacent residence (Richard Taylor).

In this case Plaintiff seeks from Defendant damages in the amount of the insurance claims

it paid, and a declaratory judgment that Lititz must provide coverage to its insured, James Schaller.

Defendant now moves for summary judgment as to all claims against it.

## I. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on

6

all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III.  ANALYSIS

**(A)  Choice of Law**

Both parties agree that Pennsylvania law should govern the adjudication of this dispute. Defendants point out in their brief that although the roofing job and subsequent fire took place in New Jersey, Schaller's Lititz insurance policy was purchased in Pennsylvania, from a Pennsylvania insurance company, by a contractor headquartered in Pennsylvania. (Defendant's Brief at 7.) Defendants further assert that adjudication of this matter would likely be the same regardless of whether Pennsylvania or New Jersey substantive law applies. Plaintiff agrees with

this assessment.  As Plaintiff states in its brief, "Plaintiff concurs with Defendant that the policy in question should be governed by Pennsylvania law.  Plaintiff agrees with Defendant that there does not seem to be any substantial difference between New Jersey and Pennsylvania regarding the rescission of a policy due to the alleged misstatements of the insured." (Plaintiff's Brief at 7.)

The central issue here is the validity of the Lititz insurance policy.  Since both parties agree that Pennsylvania substantive law governs the resolution of this dispute this Court need not engage in a protracted choice of law analysis.  This Court will apply Pennsylvania substantive law to its analysis of whether the Lititz policy is voidable.

**(B)   Lititz's Decision to Void Schaller's Insurance Policy**

"It has long been the law of this Commonwealth that it is the duty of an applicant for insurance to make full disclosure of all things material to the risk."  Rohm and Haas Co. v. Continental Cas. Co., 732 A.2d 1236, 1250 (1999) (citing Smith v. Northwestern Mut. Life Ins. Co., 46 A. 426 (Pa. 1900)).  In Smith, the Pennsylvania Supreme Court long ago held that a party who misstates a material fact on an application for insurance is unable to enforce the contract: "No principle of law will enable a party who guaranties a fact upon which a contract for insurance is based, which fact is afterwards found not to exist, to enforce the contract. . . . [I]n actions on policies of insurance with a warranty of the truth of the facts, the validity of the contract depends on the truth of the warranty, and that the engagement of the policy holder is absolute that the facts shall be as they are stated when his rights under the policy attach...." Id (citations omitted).  "Information withheld is material for purposes of allowing an insurer to rescind a policy if the information, if given, would have influenced the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing a premium rate."

Rohm and Haas Co., 732 A.2d at 1250.

[W]here the execution of a contract of insurance has been induced by fraudulent misrepresentations of the insured, the insurer may secure its cancellation. New York Life Ins. Co. v. Brandwene, 172 A. 669, 669-70 (Pa. 1934). "The burden of proving fraud is on the insurer who must prove, by clear and convincing evidence, that on the application, the insured knowingly made false statements or knowingly failed to disclose information which was material to the risk against which the insured sought to be protected. In order to show a policy is void ab initio on the basis of fraud, the insurer must prove that the intent to deceive was deliberate." Rohm and Haas Co., 732 A.2d at 1251-52 (citations omitted). Only in cases in which the insured makes a material misrepresentation by mistake and in the absence of intent have Pennsylvania Courts allowed for exceptions to the aforementioned generally held principles regarding material misrepresentations in insurance contracts. "Mere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears that there is no intention of concealing the truth, does not work a forfeiture, and a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown." Id. at 1252.

Defendant argues that its insured, James Schaller, made material misstatements on his insurance application and in representations he made to John Coyle, the agent who sold him the Lititz insurance policy.

The undisputed facts in this case are that James Schaller purchased a general commercial liability insurance policy from Lititz through agent John Coyle. (Plaintiff's Rule 56.1 Statement at ¶ 3.) At the time he purchased the policy, Schaller told Coyle that he intended to engage in

9

carpentry, windows, and siding and needed an insurance policy in order to accept work as a subcontractor with Hallmark, the general contractor. (Def. R. 56.1 Statement at ¶¶ 11-13.) Coyle asked Schaller specifically if he did roofing work, and Schaller denied that he was a roofer. (Id.) Coyle informed Schaller that roofing work was a special category of work that was not covered under the general liability policy provided by Lititz. (Id. at ¶¶ 9, 11.) Coyle testified in his deposition that it is his practice to point out to a prospective insured that roofing work would require a separate policy because he knows that some prospective clients wish to avoid higher premiums by entering into less expensive policies that do not insure roofing work. (Id.) Schaller denied he was a roofer and accepted a policy with Lititz, which specifically does not cover roofing. (Id. at ¶¶ 11-12.) Coyle, who has sold many policies on behalf of Lititz in the past, was aware that Lititz did not insure roofing work. (Id. at ¶¶ 4, 9.) Schaller signed an Accord and Application form with Lititz that describes his work specifically as, "finish carpentry, closets, sheet rock, framing windows, hardwood flooring." (Id. at ¶ 12.) The work order, which describes the work Schaller was to complete at the Smith residence was solely for a roofing job. (Id. at ¶ 14.)

      This Court finds that James Schaller made misrepresentations on his insurance contract with Lititz that he signed, and that those misstatements were material to the risk that Lititz assumed when it agreed to provide insurance to Schaller. It is undisputed that it is Lititz's policy not to insure roofing jobs. John Coyle testified that insurance companies charge higher premiums to ensure contractors who engage in roofing activities, which this Court notes, might explain Schaller's motive for misrepresenting his business. Specifically, Lititz only insured incidental roofing repairs. The work order for the improvements at the Smith residence was for

substantial roofing work and not incidental/minor repairs or handyman's work involving the roof.

James Schaller's misstatements are material because if Lititz had been aware that Schaller was seeking insurance to secure a job doing solely roofing work, it would not have entered into the insurance policy with Schaller, which was against its common practice. Under Pennslyvania law, "[i]nformation withheld is material for purposes of allowing an insurer to rescind a policy if the information, if given, would have influenced the judgment of the insurer in issuing the policy, in estimating the degree and character of the risk, or in fixing a premium rate." Rohm and Haas Co., 732 A.2d at 1250.

This Court finds that Schaller's decision to withhold information about the true nature of the work he was to perform was deliberate and intentional. The work order for the Smith residence describes the extensive roofing work in so stark a manner that this Court can only infer that Schaller intentionally misled Coyle about his intentions and was untruthful when he signed the Accord and Application form with Lititz, which described his work as other than roofing. John Coyle's testimony that Schaller needed the insurance for a job with Hallmark and the fact that Coyle prepared a certificate of insurance for Hallmark indicate that at the time Schaller made the material misstatements, he was fully aware that he would be performing work for Hallmark and that it was for a roofing job. Lititz has demonstrated by clear and convincing evidence that Schaller knowingly made material misrepresentations to Lititz. See Rohm and Haas Co.,732 A.2d at 1251-52 ("The burden of proving fraud is on the insurer who must prove, by clear and convincing evidence, that on the application, the insured knowingly made false statements or knowingly failed to disclose information which was material to the risk against which the insured sought to be protected").

This Court finds that Lititz acted lawfully and within its rights under Pennsylvania law to void the insurance policy ab initio and to decline to pay claims against Schaller brought by Plaintiff in this case.

Since this Court finds that Lititz is not obligated to pay claims for Schaller's damages to the Smith residence and the adjacent home and there is no genuine issue as to any material fact concerning Defendant's liability to Plaintiff.  Summary judgment is granted as to all Counts of the Complaint as they all pertain to Lititz's liability.

### IV.  CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment shall be granted.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: June 23, 2009